UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBIN B. RANDALL-MILLIKEN,<br><br>　　Plaintiff,<br><br>　　v.<br><br>THINGS REMEMBERED, INC.,<br><br>　　Defendant. | Civil Action No. |

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Robin Randall-Milliken ("Ms. Randall-Milliken"), by and through undersigned counsel, and complains against the Defendant, Things Remembered, Inc. ("Things Remembered"), as follows:

INTRODUCTION

1.　This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.

PARTIES

2.　Ms. Randall-Milliken is a United States citizen residing in Buxton, Maine.

3.　Things Remembered is a Delaware for-profit corporation.

JURISDICTION

4.　Things Remembered employs thousands of employees.

5.　Things remembered had 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

1

6. This Court has subject matter jurisdiction over Ms. Randall-Milliken's federal and state claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

7. On or about May 4, 2015, Ms. Randall-Milliken filed a timely Complaint of Discrimination against Things Remembered alleging unlawful disability discrimination with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

8. On or about December 8, 2015, the EEOC issued a Notice of Right to Sue with respect to Ms. Randall-Milliken's federal law claims.

9. On or about December 11, 2015, the MHRC issued a Notice of Right to Sue with respect to Ms. Randall-Milliken's state law claims.

10. Ms. Randall-Milliken has exhausted her administrative remedies with respect to all claims set forth in this Complaint.

FACTUAL ALLEGATIONS

11. Ms. Randall-Milliken worked for Things Remembered from 1982 to 1992. She returned to work for the company in 1997 until her employment ended on March 11, 2015.

12. Things Remembered operates more than 600 retail stores in the United States and Canada. Things Remembered sells keepsake gifts engraved with personalized messages.

13. As of December 2013, Ms. Randall-Milliken was the Store Manager of the Things Remembered store located in the Maine Mall in South Portland, Maine (store #355).

14. Ms. Randall-Milliken reported to District Manager Victoria Lowell.

15. Store Managers are responsible for the store's daily operations including the management of a sales staff.

16. The main responsibility of a Store Manager is to ensure that the store meets sales and financial goals and to provide excellent customer service while maintaining full compliance with a variety of operational requirements.

17. The job description for Store Managers indicates that they are working supervisors. Store Managers participate in stocking merchandise and processing incoming and outgoing merchandise shipments. Store Managers need to stand and walk, squat and kneel occasionally and frequently lift and carry up to 10 pounds. Store Managers occasionally lift and carry 11 to 30 pounds. They frequently climb a three foot ladder and occasionally use a 10 foot ladder and work with arms overhead.

18. Ms. Randall-Milliken was qualified to perform the job duties of Store Manager and performed her job well.

19. Things Remembered has admitted that Ms. Randall-Milliken was a loyal and valued employee for more than twenty years.

20. When she worked in the Maine Mall store, Ms. Randall-Milliken supervised a base crew of four Associates. There were more Associates than that assigned to work in her store during peak periods. An Assistant Store Manager position was allotted for her store and was usually filled.

21. On December 29, 2013, Ms. Randall-Milliken strained/sprained her right shoulder while lifting a box at work. Ms. Randall-Milliken noticed pain right away.

22. Ms. Randall-Milliken received treatment for her injury and continued to work but was having significant pain.

23. On March 18, 2014, while Ms. Randall-Milliken was meeting with Ms. Lowell and Ms. Lowell's supervisor, Scott Trafton, to discuss another issue, the topic of her injured shoulder came up. They instructed Ms. Randall-Milliken to see the doctor again.

24. On March 20, 2014, Ms. Randall-Milliken's medical provider put her on work restrictions including no climbing ladders and no lifting or carrying over 15 pounds.

25. Things Remembered would not accommodate Ms. Randall-Milliken's shoulder injury.

26. Instead, Things Remembered forced Ms. Randall-Milliken to take a medical leave of absence (LOA) covered by the federal Family Medical Leave Act, the Maine Family Medical Leave Requirements law, and workers' compensation laws beginning on March 21, 2014.

27. Ms. Randall-Milliken kept in touch with Things Remembered about her health status during her LOA.

28. On May 28, 2014, Ms. Randall-Milliken's medical provider released her to return to work part time as of the week of June 9, 2014. The medical provider recommended a transition to full duty beginning with 20 hours per week for two weeks.

29. Ms. Lowell expressed her displeasure at accommodating Ms. Randall-Milliken in an email to the company's benefits administrator about Ms. Randall-Milliken's return to work that read, in part, "not happy about the whole thing as you know but yes we will make it work. Please make it clear that we will pick the 20 hours that [Ms. Randall-Milliken] will work to support the store."

30. Ms. Randall-Milliken returned to work with restrictions (no lifting or carrying over 35 pounds, 20 hours per week) on Wednesday, June 11, 2014.

31. Ms. Randall-Milliken worked five hours a day, four days a week for two weeks. After that Ms. Randall-Milliken had various hours but still worked about 20 per week. Ms. Randall-Milliken resumed working full time on July 7, 2014.

32. Ms. Randall-Milliken continued to receive medical care and rehabilitation for her shoulder impairment through July 2014 including home exercises.

33. On September 27, 2014, Ms. Randall-Milliken had to go to the emergency room and was diagnosed with a perforated diverticulum. Ms. Randall-Milliken had emergency surgery to repair her colon and was treated for sepsis and peritonitis.

34. Ms. Randall-Milliken asked for and needed a medical LOA for treatment of her digestive system (colon) disability beginning on September 28, 2014.

35. Ms. Randall-Milliken remained hospitalized until October 2, 2014.

36. Ms. Randall-Milliken developed a fever three days after she was discharged from the hospital while she was home recovering. Ms. Randall-Milliken was hospitalized again on October 8, 2014 and diagnosed with three abscesses attached to her colon.

37. Conservative treatment failed and Ms. Randall-Milliken had to have further surgery on October 13, 2014.

38. Ms. Randall-Milliken was discharged from the hospital on about October 20, 2014 with a partial colectomy with ileostomy.

39. On October 28, 2014, while Ms. Randall-Milliken was still recovering from surgery, Things Remembered terminated Ms. Randall-Milliken from her Store Manager position at the South Portland store.

40. On October 28, 2014, Ms. Randall-Milliken called and left a message for Rich Farruggia, Director of Human Resources. He did not return her call.

41. On October 29, 2014, Ms. Randall-Milliken called again and spoke to Mr. Farruggia. He told Ms. Randall-Milliken that her Store Manager position in South Portland was filled by a permanent replacement. Ms. Randall-Milliken was told that when she was ready to return to work, she would be transferred to the Things Remembered store at the Mall at Fox Run in Newington, New Hampshire (store #437).

42. In its response to Ms. Randall-Milliken's complaint to the MHRC and EEOC, counsel for Defendant wrote that it was a "business decision" to fill Ms. Randall-Milliken's Store Manager position in South Portland and transfer Ms. Randall-Milliken to Fox Run. Defendant did not claim that it was an undue hardship to hold Ms. Randall-Milliken's position open until she was able to return to work.

43. The Maine Mall store in South Portland, ME is about 12 miles from Ms. Randall-Milliken's home.

44. The Fox Run store in Newington, NH is about 55 miles from Ms. Randall-Milliken's home which entailed a commute of at least an hour in each direction on a toll road.

45. On November 14, 2014, Ms. Randall-Milliken sent an email to Mr. Farruggia about her health and employment status. Ms. Randall-Milliken provided Mr. Farruggia with a copy of a note from her medical provider dated November 13, 2014. Ms. Randall-Milliken explained that although the return to work date on the note stated "until further notice," her post-surgery progress had been very good. Ms. Randall-Milliken told Mr. Farruggia that her doctor had told her that Ms. Randall-Milliken would probably be ready to return to work shortly after her next available post-surgical visit on December 9, 2014. Ms. Randall-Milliken told Mr. Farruggia that Ms. Randall-Milliken hoped that her doctor would release her to return to work shortly thereafter.

46. Ms. Randall-Milliken also told Mr. Farruggia that there might be some challenges working alone in the store due to her ileostomy. Ms. Randall-Milliken explained that she might need to take longer or more frequent bathroom breaks to care for the ileostomy. Ms. Randall-Milliken told Mr. Farruggia that she would also need another surgery in the near future to reverse the ileostomy.

47. Ms. Randall-Milliken told Mr. Farruggia that she was disappointed that her store manager position in South Portland had been filled by a permanent replacement while she was on medical leave. This was an understatement. In fact, Ms. Randall-Milliken believed that Respondent violated her rights under the MHRA and ADA by replacing her instead of having an acting Store Manager cover for her temporarily or otherwise accommodating her absence.

48. On December 9, 2014, Ms. Randall-Milliken was released to work with restrictions. Her next surgery was scheduled for January 22, 2015. Ms. Randall-Milliken advised Karen Matricardi, the LOA specialist at the company's home office, about these developments.

49. On December 12, 2014, Ms. Randall-Milliken spoke to Ms. Matricardi about returning to work and received no answer about her return.

50. On December 17, 2014, Ms. Randall-Milliken spoke to Ms. Matricardi again about returning to work. This time, Ms. Matricardi advised Ms. Randall-Milliken to contact Ms. Lowell about a schedule. Ms. Randall-Milliken called and spoke to Ms. Lowell, who instructed Ms. Randall-Milliken to report for work at the Fox Run store the following day with schedule adjustments (20 hours a week, four five-hour shifts). Ms. Randall-Milliken told Ms. Lowell about her next scheduled surgery and that Ms. Randall-Milliken anticipated a four week recovery.

51. On December 18, 2014, Ms. Randall-Milliken reported for work at the Fox Run store. Ms. Randall-Milliken was the Store Manager in name only. The "acting" Store Manager remained at the store.

52. Ms. Randall-Milliken's job duties were limited to engraving which is only one of a myriad of tasks that a Store Manager is called upon to perform. At that time, Ms. Randall-Milliken could not work alone because of her ileostomy. Ms. Randall-Milliken needed the ability to take extended and/or frequent bathroom breaks.

53. On January 6, 2015, Ms. Lowell visited the Fox Run store and asked Ms. Randall-Milliken to complete the training of Assistant Manager (Don Adams) and part time teammates before Ms. Randall-Milliken went out on medical LOA again.

54. Upon information and belief, on about January 6, 2015, Ms. Lowell asked an employee named Karen Gowen to apply for the Assistant Manager job at Fox Run.

55. Upon information and belief, on about January 9, 2015, the Assistant Manager job at Fox Run was posted and two teammates were asked to apply. The two teammates were specifically asked not to tell Ms. Randall-Milliken about it.

56. On January 18, 2015, Mr. Adams asked Ms. Randall-Milliken to turn in her keys the following day which was her last shift before her medical LOA was due to begin.

57. Ms. Lowell instructed Mr. Adams to request Ms. Randall-Milliken's keys. That was not a common practice. Store keys are normally turned in only when someone leaves the company.

58. On January 20, 2015, Ms. Randall-Milliken called Mr. Farruggia and explained that Ms. Randall-Milliken was very uncomfortable about her situation because (a) Things Remembered was hiring for a job that was already filled by Don Adams, (b) teammates were asked not to tell Ms. Randall-Milliken about it, and (c) Ms. Randall-Milliken was asked to turn in her keys.

59. Mr. Farruggia told Ms. Randall-Milliken that he would look into it and get back to her.

60. Ms. Randall-Milliken reminded Mr. Farruggia that Ms. Randall-Milliken was going out for surgery on January 22, 2015.

61. Mr. Farruggia did not call Ms. Randall-Milliken back.

62. On January 22, 2015, Ms. Randall-Milliken began another medical LOA for surgery to reverse the ileostomy.

63. On February 6, 2015, Ms. Lowell called and informed Ms. Randall-Milliken that she was replaced as Store Manager of the Fox Run store "due to business needs" and that when Ms. Randall-Milliken was ready to return to work, they would find something for her.

64. In its response to Ms. Randall-Milliken's complaint to the MHRC and EEOC, counsel for Defendant wrote that it was a "business decision" to fill Ms. Randall-Milliken's Store Manager position at the Fox Run store while she was on medical leave. Defendant did not claim that it was an undue hardship to hold the position open until Ms. Randall-Milliken was able to return to work.

65. It took Ms. Randall-Milliken longer to recover from ileostomy-reversal surgery than expected.

66. Ms. Randall-Milliken kept in touch by telephone with Ms. Matricardi about her status.

67. On Monday, March 2, 2015, Ms. Randall-Milliken called Ms. Matricardi to see if she had received Ms. Randall-Milliken's doctor's note, releasing her to return to work.

68. Ms. Matricardi said that she had not received it. Ms. Randall-Milliken informed Ms. Matricardi that Ms. Randall-Milliken was able to return to work on March 9, 2015 and that Ms. Randall-Milliken would forward the doctor's note to her.

69. On March 6, 2015, Ms. Randall-Milliken received an email from Ms. Matricardi confirming receipt of her doctor's note. Ms. Matricardi indicated that the 30 pound lifting restriction in the note was not a problem. Ms. Matricardi instructed Ms. Randall-Milliken to contact Ms. Lowell for a schedule.

70. On March 7, 2015, Ms. Randall-Milliken called Ms. Lowell. Ms. Lowell did not take Ms. Randall-Milliken's call. Ms. Randall-Milliken left a voicemail for Ms. Lowell.

71. As of the morning of March 9, 2015, Ms. Lowell had not returned Ms. Randall-Milliken's call so Ms. Randall-Milliken sent Ms. Lowell an email.

72. Upon information and belief, Things Remembered hired a new Assistant Manager who started work at the Fox Run store on March 9, 2015, knowing that Ms. Randall-Milliken was released to return to work that day.

73. At 5:45 PM on March 9, 2015, Ms. Lowell called and offered Ms. Randall-Milliken two options: (a) a part time Associate position at the Fox Run store in Newington, NH or (b) an Assistant Manager position in Nashua, NH.

74. Ms. Randall-Milliken told Ms. Lowell that it was not reasonable or financially feasible for her to accept either position.

75. Ms. Lowell replied, "I know."

76. Ms. Randall-Milliken told Ms. Lowell that Ms. Randall-Milliken would think about it.

77. On March 10, 2015, at the suggestion of the Manager of Store Operations at the home office, Ms. Randall-Milliken contacted Vice President of Human Resources Alice Guiney.

78. Ms. Guiney asked how Ms. Randall-Milliken was doing. Ms. Randall-Milliken told her that it was a very sad day, that Ms. Randall-Milliken had lost her job. Ms. Guiney asked Ms. Randall-Milliken repeatedly to consider the part time Associate job at Fox Run. Ms. Randall-Milliken told Ms. Guiney that Ms. Randall-Milliken could not afford to take the job given the cost of tolls and gas mileage and the drastic reduction in her rate of pay but that Ms. Randall-Milliken would think about it further.

79. Ms. Randall-Milliken notified Things Remembered of her decision not to accept the jobs in New Hampshire in an email to Ms. Guiney dated March 11, 2015.

80. Things Remembered has a "Company Leave" policy (separate from leave protected by the FMLA) which provides up to a maximum of four weeks' leave but does not include job protection. The policy provides that an employee returning from Company Leave will be reinstated to his or her former job if it is still open or if not, then offered another available position at the store or in the market in which the employee worked.

81. The Company Leave policy does not comply with the MHRA or the ADA in that there is no requirement that Things Remembered hold an employee's position open until he or she returns unless the leave of absence poses an "undue hardship" as that term is defined by the MHRA and ADA.

82. Ms. Randall-Milliken's right shoulder sprain/strain and Ms. Randall-Milliken's colon disease/impairment are disabilities as defined by the MHRC and the ADA.

83. Ms. Randall-Milliken's right shoulder sprain/strain significantly impaired her health, substantially limited major life activities, and had an actual or expected duration of at least six months when viewed without mitigating measures.

84. Ms. Randall's colon disease/impairment substantially limited the functioning of Ms. Randall-Milliken's digestive system and significantly impaired her health when viewed in the absence of mitigating measures.

85. Ms. Randall-Milliken is a qualified individual with a disability.

86. At the time that Things Remembered took adverse employment actions against Ms. Randall-Milliken, Ms. Randall-Milliken was capable of performing the job of Store Manager with or without reasonable accommodation.

87. Ms. Randall-Milliken requested reasonable accommodations in connection with her disabilities including temporary work restrictions and medical LOAs.

88. On October 28, 2014, Things Remembered violated Ms. Randall-Milliken's rights under the MHRA and ADA by dismissing her as Store Manager at the South Portland, ME store while Ms. Randall-Milliken was on a protected leave, recovering from colon surgery.

89. On February 9, 2015, Things Remembered violated Ms. Randall-Milliken's rights again under the MHRA and ADA by dismissing her from the position of Store Manager of the Fox Run store in Newington, NH while Ms. Randall-Milliken was recovering from surgery to reverse the ileostomy.

90. It would not have been an undue financial or administrative burden for Things Remembered to fully accommodate Ms. Randall-Milliken's medical LOAs.

91. Things Remembered had covered for Ms. Randall-Milliken's absences prior to terminating and replacing her in South Portland and Fox Run by reassigning the managers of other stores to cover and by having assistant store managers serve as acting managers on a temporary basis.

92. Upon information and belief, Things Remembered accommodated longer medical LOAs than requested and needed by Ms. Randall-Milliken for managers of stores in Auburn, ME, Watertown, MA and Saugus, MA.

93. For example, the Auburn Store Manager (Ms. Randall-Milliken's sister) took a medical LOA from October 21, 2012 to May 13, 2013. The Auburn Store Manager position was held open for Ms. Randall-Milliken's sister for over six months.

94. In contrast to this, Ms. Randall-Milliken was terminated from her position in South Portland after only one month and from her position at Fox Run after just three weeks.

95. On March 11, 2015, Things Remembered violated Ms. Randall-Milliken's rights again under the MHRA and ADA by giving her no reasonable alternative but to resign in the face of unlawful discrimination (constructive discharge).

96. The only employment Things Remembered made available to Ms. Randall-Milliken at the end of her colon disability-related medical LOA were demotions at locations that were an unreasonable distance from Ms. Randall-Milliken's home.

97. Things Remembered discriminated against Ms. Randall-Milliken because of disability, because Ms. Randall-Milliken was perceived to be a person with a disability, and because Ms. Randall-Milliken requested and required reasonable accommodations for her disabilities.

98. Things Remembered also discriminated against Ms. Randall-Milliken by failing to reasonably accommodate her disabilities.

99. Things Remembered also retaliated against Ms. Randall-Milliken for requesting and needing reasonable accommodation.

## COUNT I: MHRA-FAILURE TO ACCOMMODATE

100. Paragraphs 1-99 are incorporated by reference.

101. Defendant violated the MHRA by failing to effectively accommodate Plaintiff's disabilities.

## COUNT II: MHRA-DISABILITY DISCRIMINATION

102. Paragraphs 1-101 are incorporated by reference.

103. Defendant's conduct violated the MHRA's prohibition on disability discrimination.

## COUNT III: MHRA-RETALIATION

104. Paragraphs 1-103 are incorporated by reference.

105. Defendant's conduct violated the MHRA's prohibition on retaliation.

## COUNT IV: ADA-FAILURE TO ACCOMMODATE

106. Paragraphs 1-105 are incorporated by reference.

107. Defendant's conduct violated the ADA by failing to effectively accommodate Plaintiff's disabilities.

## COUNT V: ADA-DISABILITY DISCRIMINATION

108. Paragraphs 1-107 are incorporated by reference.

109. Defendant's conduct violates the ADA's prohibition on disability discrimination.

## COUNT VI: ADA-RETALIATION

110. Paragraphs 1-109 are incorporated by reference.

111. Defendant's conduct violated the ADA's prohibition on retaliation.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

(a) Declare the conduct engaged in by Defendant to be in violation of her rights;

(b) Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate her rights;

(c) Order Plaintiff to employ her in her former position at the Maine Mall in South Portland, Maine;

(d) Award equitable-relief for back pay, benefits and prejudgment interest;

(e) Award compensatory damages in an amount to be determined at trial;

(f) Award punitive damages in an amount to be determined at trial;

(g) Award nominal damages;

(h) Award attorney's fees, including legal expenses, and costs;

(i) Award prejudgment interest;

(j)     Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability;

(k)     Require Defendant to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination in the future;

(l)     Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

(m)    Require that Defendant train all management level employees on the protections afforded by the MHRA and ADA;

(n)     Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant failed and refused to provide her with reasonable accommodations and constructively discharged her because of her disabilities; and

(o)     Grant to Plaintiff such other and further relief as may be just and proper.


Dated:  December 23, 2015                  */s/* Chad T. Hansen
                                           chansen@maineemployeerights.com

                                           */s/* Peter Thompson
                                           pthompson@maineemployeerights.com

                                           Attorneys for the Plaintiff

                                           MAINE EMPLOYEE RIGHTS GROUP
                                           92 Exchange Street 2nd floor
                                           Portland, Maine 04101
                                           Tel. (207) 874-0905
                                           Fax (207) 874-0343